UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANDREW ANANIA

No. 21 CR 633

Honorable Edmond E. Chang

**GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE**

The United States of America, by its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following consolidated motions *in limine*.

### Introduction and Background

*Release on Federal Pre-Trial Supervision in 19 CR 532*

On June 26, 2019, a federal grand jury in the Northern District of Illinois approved charges against Anania for being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g), in case No. 19 CR 532. On October 27, 2020, Anania was released on home incarceration, pursuant to an order which advised defendant that "while on release, if you commit a federal felony offense, the punishment is an additional prison term of not more than ten years." Case No. 19 CR 532, Dkt. 40.

On February 2, 2021, Judge Sharon Coleman revoked Anania's pre-trial release for failing to comply with various conditions of release, including leaving his home unauthorized, and ordered Anania to report to the United States Marshals. Anania failed to report and Judge Coleman issued a warrant for his arrest. Case No.

19 CR 532, Dkt. 60, 61.

### February 27, 2021 Kidnapping and Carjacking (Counts One and Two)

On February 27, 2021, a few minutes before 4:20 a.m., Victim A remotely started her car, which was parked on the street outside her residence on the 4000 block of South Laporte Avenue, in Chicago, Illinois. When she exited the residence at approximately 4:20 a.m. and started walking to her car, Anania approached Victim A with his hand in his sleeve, told Victim A he had a gun, and instructed her to open her car door and get in the car. Anania also got in the car and instructed Victim A to drive. When they reached an intersection, Anania fondled Victim A's genitals and breasts (over her clothing) and told her that he was going to have her "suck my dick." At the next intersection, Anania instructed Victim A to switch seats with him. When getting out of the car, Victim A saw that Anania was holding cigarettes in his sleeve, rather than a gun. Victim A fled the scene, running home. Anania took Victim A's car and crashed the car approximately 10 minutes later.

When Victim A's car was recovered two hours later, officers recovered a black baseball hat with the numbers "312," and took DNA swabs from inside the vehicle. Subsequent lab testing found that DNA consistent with Anania was on the baseball hat (3.5 octillion:1) and the driver's seat of the car (370 trillion:1). Furthermore, multiple residential surveillance cameras captured Anania, wearing clothing consistent with the kidnapper/carjacker (including the "312" baseball hat) in the yards of various residences in Victim A's neighborhood over the course of the 80 minutes prior to the kidnapping/carjacking.

Defendant was charged with one count of kidnapping (Count One) and one count carjacking (Count Two) for these events.

### *March 8, 2021 Kidnapping (Count Three)*

On March 8, 2021, Anania went to a neighboring Speedway and Burrito Paradise in Darien, Illinois, asking employees if they could call a taxi for him. Two employees (one at Speedway and one[1] at Burrito Paradise) subsequently identified Anania in a photo array. One of the Burrito Paradise workers called an Uber for defendant.

At approximately 6:14 p.m., Victim B, a daycare worker and part-time Uber driver, arrived outside the Burrito Paradise, and Anania got in her car. Victim B subsequently identified Anania in a photo array. Shortly after the ride began, Anania leaned into the front seat and showed Victim B a gun. Anania told her "you're going to do everything I tell you to do." Anania demanded Victim B's purse and began calling her by name, stating that he knew where she lived. Anania climbed into the front seat and fondled Victim B's breasts and upper thigh (over her clothing). Anania then exposed his penis and instructed Victim B to rub his penis. Anania then instructed Victim B to drive off the highway, into an alley, and forced her to perform oral sex. Anania next instructed Victim B to drive to another alley and pull down her pants. He vaginally penetrated her with his penis, then forced Victim B to perform oral sex on him. Anania next directed Victim B to drive to the intersection of West

---

[1] A second Burrito Paradise employee pointed to Anania in the photo array and said she was 90% sure it was him.

25th Street and Albany Avenue in Chicago. He stole $6 from Victim B's glove compartment and fled.

Following the incident, Victim B called 911, and was later treated at Mount Sinai Hospital. A rape kit was administered, which found semen on Victim B's underwear. Subsequent lab testing found that the DNA from the semen was consistent with Anania (190 octillion:1).

Based on a search of Anania's phone, between the date of this kidnapping and defendant's March 13, 2021 arrest, Anania used his phone to look at photographs of Victim B on social media and to research her address and the identity of her relatives. Anania made several online searches related to his actions, including "[Victim B]," "sexual assault Stickney," "Andrew Anania," "woman uber kidnapped," "carjacking assault Chicago," "can the police track your phone with location off," and "do all uber drivers have cameras." Defendant checked the social media pages for the police departments of Stickney, Summit and Berwyn, and looked up Amtrak tickets to take a train to Denver.

Defendant is charged with one count of kidnapping (Count Three) for these events.

### March 10, 2021 Kidnapping (Counts Four, Five and Six)

On March 10, 2021, at approximately 3:44 a.m., Victim C used her key fob to remotely start her car, parked outside her residence on the 5100 block of West 25th Place in Cicero, Illinois. She then exited her residence and walked to her car. Two men, Anania and Walter Moran, approached Victim C. Anania pointed a gun at

Victim C and instructed her to open the car door. Anania got into the driver's seat and Moran got into the back seat of Victim C's car. Anania instructed Victim C not to "try anything." Anania instructed Victim C to give Moran her purse. Anania drove to approximately 2600 West 23rd Place, where Moran exchanged gunfire with individuals standing on the sidewalk. Victim C began crying after the gunfire exchange. Anania then drove to Hodgkins Village, where he briefly exited the vehicle to urinate. Anania then drove to the intersection of 45th Street and Maple Avenue. At approximately 4:30 a.m., Anania instructed Victim C to exit the car and walk away. Anania and Moran fled in Victim C's car.

At approximately 6:05 a.m., gas station surveillance footage captured Victim C's car being used by an individual wearing a black and gray "Door County" baseball hat, a black Tommy Hilfiger jacket with a white zipper, dark pants, white shoes, and a key chain hanging around his groin area. The clothing is entirely consistent with the clothing Anania was wearing in Speedway surveillance footage from March 8, 2021, immediately prior to the kidnapping of Victim B.

Law enforcement located Victim C's stolen car and attempted to pull it over. Anania fled in Victim C's car and led law enforcement on a high-speed chase. After On-Star remotely disabled Victim C's car, Anania fled on foot through the backyard of a residential neighborhood, dropping the "Door County" baseball hat and a key chain with the name of Anania's sister. Subsequent lab testing found that the DNA from the hat (190 octillion:1) and keychain (190 octillion:1) was consistent with Anania.

5

Lab testing found Moran's DNA on Victim C's purse (150:1) and his fingerprint on a direct deposit slip in the purse. Cell site data for Moran's phone indicates that his phone was in the area of Victim C's kidnapping and that the phone travelled in the path described by Victim C during the course of her kidnapping.

Defendant is charged with one count of kidnapping (Count Four), carjacking (Count Five), and using a firearm in relation to a crime of violence (Count Six), for these events.

*Procedural History*

On March 9, 2023, a federal grand jury returned a six-count superseding indictment against defendant Andrew Anania. R. 30. The superseding indictment charges Anania with three counts of kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) (Counts One, Three and Four); two counts of carjacking, in violation of Title 18, United States Code, Section 2119 (Count Two and Five); and one count of using a firearm during a crime of violence (Count Six). The superseding indictment further charges Anania with committing each of these offenses while on federal pre-trial release, pursuant to Title 18, United States Code, Section 3147.[2]

On October 31, 2024, Anania pleaded guilty to Counts One and Two of the superseding indictment, admitting to the kidnapping and carjacking of Victim A.

The trial on the remaining counts is scheduled to begin on January 6, 2025.

---

[2] On April 18, 2024, Moran was charged with one count of kidnapping and one count of carjacking in relation to the March 10, 2021 incident. He pled guilty on November 5, 2024.

## I.    Motion to Admit Evidence at Trial Pursuant to Federal Rule of Evidence 404(b).

The government seeks to introduce evidence of Anania's kidnapping of Victim A. The government does not seek to admit this evidence to show defendant's propensity to commit the remaining charged crimes; instead, it is admissible under Evidence 404(b) as (1) evidence of defendant's motive, intent, plan and preparation, with respect to the kidnapping of Victim B; and (2) evidence of defendant's intent, plan and identity as the individual who kidnapped Victim C.

### a.  Legal Principles

Rule 404(b)(1) prohibits the use of "other act" evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019). But Rule 404(b)(2) provides a non-exhaustive list of other purposes for which such evidence is admissible. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b)(2); *see also United States v. Taylor*, 522 F.3d 731, 734-36 (7th Cir. 2008) (this list of proper purposes for which other-acts evidence may be admitted is not exhaustive; evidence of other bad acts is admissible so long as the evidence is not introduced to show the defendant's bad character).

7

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*), the Seventh Circuit "set the roadmap for determining which camp a particular piece of other-act evidence falls into." *Brewer*, 915 F.3d at 415. Under *Gomez*, "after a Rule 404(b) objection, the proponent of the other-act evidence must demonstrate that the evidence is relevant to a legitimate purpose 'through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860). "If the proponent does so, the district court must then use Rule 403 to determine 'whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice,' taking into account 'the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.'" *Id.* (quoting *Gomez*, 763 F.3d at 860); *see also United States v. Thomas*, 897 F.3d 807, 813 (7th Cir. 2018).

> **b. Defendant's Failure to Complete His Sexual Assault of Victim A is Evidence of Defendant's Motive, Intent, Plan and Preparation for the Kidnapping of Victim B.**

> *i. Intent/Motive*

With respect to the kidnapping of Victim B, defendant has made the issues of intent and motive the key issues at trial. Defendant has agreed to stipulate to his identity as the person who got into Victim B's car, which presumably means he does not intend to argue whether DNA from his semen was recovered from Victim B's underwear. According to defendant's statement to a correctional officer, and proffers by defense counsel, defendant's plan is to argue at trial that Victim B *willingly and*

8

*consensually* engaged in sexual relations with defendant, and that Victim B's willing consent means that no kidnapping occurred. Defendant's claims are directly contrary to Victim B's statements that defendant kidnapped her at gunpoint and forced her to perform sexual acts during the kidnapping.

The Seventh Circuit has found that evidence of a defendant's prior failed attempts to commit a crime can be used as evidence of defendant's intent and motive to complete the charged crime. In *United States v. Adkins*, 743 F.3d 176, 183-184 (7th Cir. 2014), the Seventh Circuit upheld the admission of evidence regarding defendant's previous failed attempt to travel to Canada to procure heroin, as evidence of defendant's charged attempt to procure heroin eight days later. *Adkins* found that the evidence demonstrated defendant's intent to procure heroin on the charged date, and that the prior failed trip provided a motive for the charged conduct. *See also United States v. Howard*, 692 F.3d 697, 704 (7th Cir. 2012) (upholding the admission of evidence that defendant previously hired a man to throw acid in the victim's face as evidence of defendant's intent and motive in charged offense of hiring someone to murder victim); *United States v. Knope*, 655 F. 3d 647 (7th Cir. 2011) (defendant's prior attempt to meet up with minor for sex was admissible to show defendant's intent with regards to the charged attempted enticement of a minor that occurred less than three years later); *United States v. Brandon*, 64 F.4th 1009, 1021 (8th Cir. 2023) (evidence of defendant's prior conviction for kidnapping less than a year earlier than charged kidnapping was admissible as evidence of intent, plan and identity with respect to the charged kidnapping).

9

Here, defendant intended to kidnap a stranger in her car and force her, using the threat of a gun, to perform oral sex on him. He tried to do it with Victim A, telling her he had a gun and that he was going to make her "suck my dick." Although defendant was able to grope Victim A's genitals and breasts, Victim A eventually escaped and defendant's attempt to force her to perform oral sex failed. That failed attempt is probative evidence that defendant continued to have this intent and motive when he kidnapped Victim B at gunpoint, nine days later, and successfully forced her to perform oral sex, and other sexual acts, in her car during the course of the kidnapping.

The Seventh Circuit has also found that evidence of prior acts can be admitted to show a defendant's sexual preference or fetish, for the purpose of establishing motive. In *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006), the Seventh Circuit upheld the admission of evidence that defendant previously molested a young relative, finding that "prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." *See also United States v. Roux*, 715 F.3d 1019, 1025 (7th Cir. 2013).

Here, defendant's kidnapping of Victim A and telling her that he was going to force her to perform oral sex (after telling her he had a gun) is evidence that defendant was sexually excited by the prospect of sexual dominance over a stranger at perceived gunpoint during a kidnapping, and by receiving oral sex from that stranger. Evidence of that sexual proclivity is directly probative of defendant's motive for kidnapping

10

Victim B (another stranger) at gunpoint and his intent to sexually dominate Victim B by forcing her to perform oral sex and other sexual acts in her car during the course of that kidnapping.

### ii. Plan and Preparation

Evidence of other acts is permissible as "evidence of [defendant]'s preparation and planning of the charged crime." *United States v. Howard*, 692 F.3d 697, 704 (7th Cir. 2012) (defendant's prior unsuccessful hiring of a man to kill victim was admissible evidence of defendant's plan to hire someone to kill victim); *United States v. Zamora*, 222 F.3d 756, 762-763 (10th Cir. 2000) (evidence of defendant's previous "botched" robbery attempt was admissible as evidence of defendant's plan and motive in the charged robbery).

A key aspect of the evidence surrounding defendant's February 27, 2021 kidnapping of Victim A is that the defendant failed to achieve his stated intent: to force Victim A to perform oral sex. Evidence detailing why and how he failed at this initial attempt elucidates the preparation he put into the kidnapping of Victim B, and the modifications he made to his plan of attack, to ensure that he successfully forced Victim B to perform oral sex and engage in other sexual acts.

The kidnapping of Victim A "failed" (from defendant's perspective) immediately after defendant announced his intent to force Victim A to perform oral sex on him. Realizing Victim A could not perform oral sex while driving, defendant ordered Victim A to switch seats with him. When Victim A stopped at the intersection and then opened the door to get out of the car, two key things happened: 1.) she was

11

able to see that the object in defendant's sleeve, which defendant had claimed was a gun and which she believed was a gun, was actually a pack of cigarettes; and 2.) Victim A, free from the car and the immediate reach of defendant, ran away from defendant.

In response to those mistakes, defendant prepared for Victim B's kidnapping by obtaining and bringing a firearm to the kidnapping of Victim B, rather than relying on a hidden object in his sleeve and the claim of having a firearm. Defendant then adapted his plan by immediately showing Victim B the firearm, holding it right next to her so she could see it was genuine. When defendant demanded oral sex from Victim B, he had her park and remain in the driver's seat, denying her the opportunity to escape like Victim A. Later in the kidnapping, when defendant did instruct Victim B to get out of the car (to accommodate his additional forced sexual attacks), he made the gun visible during the process, got out of the car prior to Victim B, and stood next to Victim B as she moved from the front seat to the back seat, to prevent her escaping like Victim A.

Evidence of defendant's mistakes during his kidnapping of Victim A are directly probative of the plan and preparation he put into the kidnapping of Victim B.

### c. Defendant's Kidnapping of Victim A is Evidence of Defendant's Identity, Plan, Intent and Motive in the Kidnapping of Victim C.

With respect to the kidnapping of Victim C, defendant has made identity the key issue at trial. Defendant has agreed to stipulate to the fact that he was the man driving Victim C's car an hour after the kidnapping and carjacking, but not that he

12

was present at the actual kidnapping and carjacking. Co-defendant Walter Moran proffered a statement through his attorney that Moran kidnapped Victim C with an unnamed individual (not Anania) and then gave the car to Anania; subsequent to this proffer, defendant Anania named Moran as a prospective witness in his defense.

The Seventh Circuit has repeatedly affirmed the admission of *modus operandi* evidence pursuant to Rule 404(b) as evidence to prove defendant's identity as the culprit in the charged case. *See, e.g.*, *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019); *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008); *United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010); *United States v. Smith*, 103 F.3d 600 (7th Cir. 1996); *United States v. Powers*, 978 F.2d 354, 361-62 (7th Cir. 1992); *United States v. Khorrami*, 895 F.2d 1186, 1194-96 (7th Cir. 1990); *see also United States v. Brandon*, 64 F.4th 1009, 1021 (8th Cir. 2023) (evidence of defendant's prior conviction for kidnapping less than a year earlier than charged kidnapping was admissible as evidence of intent, plan and identity with respect to the charged kidnapping).

The government seeks to offer evidence of defendant's kidnapping of Victim A for relevant, non-propensity purpose – to prove defendant's identity by demonstrating his *modus operandi* in conducting kidnapping, and to prove defendant's plan and intent. "In evaluating the probative value of *modus operandi* evidence, we focus on the commonalities between the charged crime and the other act – not on their differences." *Price*, 516 F.3d at 604. Here, defendant's kidnapping of Victim A was substantially similar to defendant's kidnapping of Victim C:

- The two kidnappings occurred eleven days apart from each other, in the spring of 2021.

- The kidnappings occurred on the far west side of Chicago, 3.5 miles apart from each other.

- The kidnappings each occurred on a residential street, three blocks west of a major road, specifically Cicero Avenue in both instances.

- The kidnappings each occurred at approximately 4:00 a.m., specifically at 3:44 a.m. and 4:20 a.m.

- Prior to each kidnapping, the defendant stood outside on the residential street.

- In both instances, the defendant selected a victim who was a woman who remote started her vehicle prior to leaving her residence to go to work.

- In both instances, the defendant waited to approach the remote started vehicle until the victim was close to the vehicle, and too far from her residence to run back inside.

- In both instances, the defendant confronted the victim as she got to her car (although defendant confronted Victim A right before she got into the car, and Victim C right after she got into the car).

- In both instances, defendant represented that he had a gun.

- In both instances, defendant disguised himself wearing a hat and a hoodie.

- In both instances, defendant got into the car with the victim, and in both instances, defendant instructed the victim to remain in the car with him.

14

- In both instances, defendant then instructed the victim to drive east, towards Cicero.

Collectively, these similarities constitute highly probative *modus operandi* evidence in support of defendant's identity as the man who kidnapped Victim C, and the plan used by defendant to kidnap Victim C. The specific details of these kidnappings are more than "sufficiently idiosyncratic to permit an inference of pattern." *Gomez*, 763 F.3d at 854. Admittedly, defendant took additional precautions in the kidnapping of Victim C that he did not take in the failed kidnapping of Victim A, by bringing an actual firearm and an accomplice. However, the defendant's specific plan of identifying and confronting the kidnapping victim remained virtually identical. *See Brewer*, 915 F.3d at 415-16 (explaining that the Seventh Circuit has "considered *modus operandi* to mean a distinctive—not identical—method of operation").

Furthermore, defendant's kidnapping of Victim A (who he sexually molested and attempted to further sexually assault during the course of the kidnapping) and Victim B (who he sexually assaulted during the course of the kidnapping) in the eleven days prior to his kidnapping of Victim C are propensity-free evidence of defendant's intent and motive in kidnapping Victim C. A typical carjacker would have ordered Victim C out of the car and taken her car; a typical kidnapper may have demanded a monetary ransom. Over the course of the two prior kidnappings, defendant revealed his motive and intent to sexually assault female victims in their cars. Even though defendant (now accompanied by Moran) never attempted to

15

sexually assault Victim C, the prior kidnappings explains why defendant kept Victim C in the car and drove her out to a forest preserve (and help identify defendant as Victim C's kidnapper).

### d. The Probative Value of Defendant's Kidnapping and Carjacking of Victim A is Not Substantially Outweighed by the Risk of Unfair Prejudice.

The evidence of defendant's kidnapping of Victim A is extremely probative, either as evidence of defendant's motive, intent, plan and preparation with respect to the kidnapping of Victim B, or as evidence of defendant's identity, plan, motive and intent with respect to the kidnapping of Victim C. That probative value is not substantially outweighed by any unfair prejudice that may arise as a result of introducing that evidence, particularly when considered in the context of the direct evidence of the charged offenses that the jury will also hear.

In *Gomez*, 763 F.3d at 857, the Seventh Circuit noted that the degree to which a particular fact is contested matters to the fact-specific balancing called for under Rule 403, explaining that the probative value of the evidence increases based on "the degree to which the non-propensity issue actually is disputed." Here, the government anticipates that defendant will primarily contest defendant's intent and motive with respect to Victim B, and his identity as the kidnapper of Victim C. Defendant's kidnapping of Victim A is directly relevant to those non-propensity issues central to the trial, for the reasons explained *supra. See e.g. United States v. Adkins*, 743 F.3d 176, 184 (7th Cir. 2014) (finding evidence of prior failed attempt was not unduly

16

prejudicial; it was prejudicial to defendant only because it helped prove the charged crime).

Moreover, the risk that the evidence of defendant's kidnapping of Victim A will create unfair prejudice to defendant – as someone charged with kidnapping two other women – is comparatively less than it would be for someone facing charges unrelated to kidnapping. Here, defendant's kidnapping of Victim A (and sexual assault of Victim A during the kidnapping) are no more incendiary than the central allegations of this case: that defendant kidnapped two women and repeatedly sexually assaulted one of the victims during the kidnapping. The government anticipates that the jury will hear evidence – in other words, direct evidence of the charged offenses — that defendant kidnapped Victim C at gunpoint, that defendant kidnapped Victim B at gunpoint, that defendant exposed his penis to Victim B and demanded Victim B rub his penis, that defendant demanded Victim B drive to an alley and then perform oral sex on defendant, that defendant demanded Victim B drive him to another alley and then vaginally penetrated Victim B and demanded that she again perform oral sex on him, and that defendant stole money from Victim B. In light of this direct evidence of the charged offenses, defendant's kidnapping of Victim A, which occurred over a relatively brief period of time, and involved defendant's stated attempt to have Victim A perform oral sex, but failure to achieve that assault due to Victim A's escape, cannot be viewed as unduly prejudicial.

Finally, any prejudice to defendant can be diminished through a limiting instruction. Specifically, the Court should direct the jurors to consider defendant's

17

kidnapping of Victim A solely as proof of defendant's motive, intent, plan and preparation with respect to the kidnapping of Victim B, and/or as evidence of defendant's identity, plan, motive and intent with respect to the kidnapping of Victim C. When coupled with proper limiting instructions, which may be given at the time the evidence is admitted as well as during the final jury instructions, any unfair prejudice stemming from this evidence will be far less than its significant probative value. *See Gomez*, 763 F.3d at 860 (An "[a]ppropriate jury [instruction]" "may help to reduce the risk of unfair prejudice inherent in other-act evidence.").

To further reduce potential prejudice, the government proposes that the parties can refer to the admissions made by defendant in defendant's prior plea declaration as "defendant's prior sworn admissions" at trial, rather than introducing the fact of defendant's plea or conviction. *See, e.g., Brewer*, 915 F.3d at 417 (noting with approval that the court excluded the evidence of conviction of one of Brewer's prior robberies).

## II. Motion to Admit Evidence of Anania's Prior Criminal Convictions

Defendant has seven prior adult criminal convictions, including the following felony convictions: (1) a 2024 conviction for kidnapping and carjacking; (2) a 2021 conviction for being a felon in possession of a firearm; and (3) a 2017 conviction for conspiracy to commit first degree murder[3]. Each of these convictions occurred less

---

[3] Defendant's other adult convictions include a 2012 conviction for truancy, a 2011 conviction for curfew, a 2011 conviction for loitering, and a 2010 conviction for disorderly conduct. Defendant also has juvenile adjudications, including a 2013 adjudication for criminal trespass in a stolen vehicle, a 2012 adjudication for aggravated battery, and a 2011 adjudication for theft.

than ten years prior to the trial scheduled in this case.

If defendant testifies, the government would seek to introduce evidence of these felony convictions.

Federal Rule of Evidence 609 permits the government to attack a defendant's character for truthfulness with evidence of his prior criminal convictions. Pursuant to Federal Rule of Evidence 609(a)(1)(B), evidence of defendant's 2024, 2021 and 2017 convictions *must* be admitted, so long as the probative value of the evidence outweighs its prejudicial effect to the defendant.

There is a five-part balancing test used to determine whether the probative value of defendant's felony convictions outweighs their prejudicial effect. The factors are: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004).

With respect to the first factor, the defendant's convictions for conspiracy to commit first degree murder, being a felon in possession of a firearm, and kidnapping/carjacking are serious crimes which have significant impeachment value if the defendant testifies. With respect to the second factor, the defendant's conduct underlying his kidnapping/carjacking conviction occurred within days of the charged conduct in this case; the proceedings with respect to defendant's conviction for being a felon in possession of a firearm were happening *simultaneous* with his conduct in

19

this case (defendant was on pretrial release for that offense at the time of the charged conduct); and the conviction for conspiracy to commit first degree murder occurred only four years prior to the events of this case.

With respect to the third factor, the government concedes that both the kidnapping/carjacking conviction and the conviction for being a felon in possession of a firearm are similar, if not identical, to the charges here. Conversely, conspiracy to commit first degree murder is entirely dissimilar from the currently charged conduct. However, to minimize the risk the risk of prejudice to the defendant, with respect to all of these convictions, the government's intent at this time is only to introduce the fact of defendant's prior felony conviction, the dates of conviction and sentence, and the length of defendant's sentence, without introducing the specific nature of the conviction.

With respect to the fourth and fifth factors, in the event the defendant testifies, it will undoubtedly be to deny Victim B's account of her kidnapping (by claiming that Victim B had consensual sex with him in the absence of force), and to deny his identity as the individual who kidnapped and carjacked Victim C (by claiming that he obtained Victim C's vehicle subsequent to the carjacking/kidnapping). Under this scenario, defendant's credibility will become central to the case. By extension, defendant's prior convictions are a relevant factor for the jury to consider in assessing his credibility at the time of his testimony.

Finally, whatever danger of unfair prejudice an inquiry into the defendant's prior convictions might pose will be curbed by a limiting instruction that directs the

jury to consider that evidence for nothing other than impeachment purposes. *See, e.g., United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997) (upholding district court order allowing inquiry into defendant's prior convictions in part because the court "gave the jury a clear limiting instruction, directing the jury to consider the prior conviction only for impeachment purposes"); *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir.1993) ("[A]ny prejudicial effect that the introduction of the prior felony convictions could have had was overcome by the court's limiting jury instruction, which directed that this evidence could not be used to demonstrate a propensity to commit crime, but could only be used to impeach the defendant's testimony.")

For these reasons, the government respectfully requests that this Court permit it to impeach defendant with his prior felony convictions in the event he testifies at trial.

## III.  Motion to Recall a Law Enforcement Witness

In order to present its case in a chronological and coherent manner, the government requests that the Court permit the government to recall a law enforcement witness, FBI Special Agent Nina Miller, the case agent, during its case-in-chief. The government does not anticipate duplicative testimony, but intends to address separate topics in the testimony on recall.

The government expects that Special Agent Miller will first testify briefly as a factual witness who took the buccal swabs of defendant Anania and co-defendant Walter Moran, as well as the fingerprints of Moran, laying the foundation for the forensic expert testimony throughout the trial.

Following Special Agent Miller's initial testimony, the government will present evidence and testimony regarding the kidnapping of Victim B. This testimony will include witness testimony regarding Anania's identity and behavior prior to entering Victim B's car, the victim's testimony detailing the events of the kidnapping, forensic testimony identifying Anania as the kidnapper, and the introduction of records (*i.e.* surveillance footage, bodyworn camera footage, records related to Victim B's vehicle, and Uber records), either by custodian testimony or stipulations. After this testimony, the government will recall Special Agent Miller to: (1) publish the admitted records and footage; and (2) walk through the ways in which the admitted records and footage corroborate Victim B's account of the kidnapping.

Following Special Agent Miller's testimony regarding Victim B, the government will present evidence and testimony regarding the kidnapping of Victim C, and the arrest of Andrew Anania. This testimony will include the victim's testimony detailing the events of the kidnapping, witness testimony regarding gunfire during the kidnapping, witness testimony regarding Anania's flight from law enforcement after the kidnapping, forensic testimony identifying Anania as the kidnapper, witness testimony regarding Anania's arrest, and the introduction of records (*i.e.* surveillance footage, bodyworn camera footage, records related to Victim C's vehicle, records related to Moran's phone, records related to Anania's phone and Onstar records), either by custodian testimony or stipulations. After this testimony, the government will recall Special Agent Miller to: (1) publish the admitted records and footage; and (2) walk through the ways in which the admitted records and footage

corroborate Victim C's account of her kidnapping and, particularly with respect to the material recovered from Anania's phone, Victim B's account of her kidnapping.

Since the trial involves two kidnappings, Special Agent Miller's testimony will make more sense if presented in context with the other evidence and testimony involving that particular kidnapping. To facilitate the presentation of evidence in a clear and chronological manner, the government requests the Court's permission to recall Special Agent Miller.

The Seventh Circuit has held that "[t]he district court has substantial discretion in its control of the presentation of evidence at trial." *United States v. Dent*, 984 F.2d 1453, 1463 (7th Cir. 1993) (citing Fed. R. Evid. 611(a)) (overruled on other grounds). Included in its authority and sound discretion is the ability to permit the recalling of witnesses. *Id.* (citing *United States v. Maddox*, 944 F.2d 1223, 1230 (6th Cir. 1991)). Courts regularly permit parties to recall witnesses as part of the presentation of evidence. *See United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (no abuse of discretion for district court to allow the government to recall a witness based on new information); *United States v. Williams-Ogletree*, No. 11 CR 203, 2013 WL 66207, at *3 (N.D. Ill. Jan. 4, 2013) (granting the government's motion *in limine* to allow the recalling of certain witnesses to present evidence in a coherent manner). Accordingly, to facilitate the presentation of evidence at trial and to facilitate juror comprehension, the government respectfully requests that the Court permit the government to recall Special Agent Miller during its case-in-chief.

## IV. Motion to Admit Victim's Prior Consistent Statements Pursuant to Rule 801(d)(1)(B)(i).

According to Rule 801(d)(1)(B)(i), statements are not hearsay when they are consistent with the declarant's testimony and are offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

Defendant's trial strategy rests entirely on making an express or implied charge that Victim B is fabricating her testimony at trial. As set forth *supra*, defendant's proffered trial strategy with respect to his kidnapping of Victim B is to claim that no kidnapping occurred, that Victim B consented to go with defendant, and that Victim B consented to engaging in sexual acts with defendant. Those claims are diametrically opposed to the anticipated testimony of Victim B, who will testify that defendant showed his firearm to Victim B and threatened her, by (a) telling her, "here's what we're going to do; you're going to do everything I tell you to do;" (b) by telling her he knew her name and where she lived; (c) by telling her he was a member of a street gang; and (d) and by telling her, "I can make you do anything," all while in possession of a firearm, which he showed to her and pointed at her on several occasions.

On March 8, 2021, less than a half hour after the kidnapping concluded, Victim B made recorded statements to law enforcement officers, walking through the details of her kidnapping. On March 14, 2021, six days after the kidnapping, Victim B made recorded statements to an Assistant States Attorney, again walking through the

24

details of her kidnapping. The government anticipates that Victim B's trial testimony will be consistent with these prior statements, and seeks to enter those statements in evidence pursuant to Rule 801(d)(1)(B)(i).

## V.    Motion to Admit Defendant's Gang Affiliation and Statement Regarding Gang Affiliation.

During the kidnapping of Victim B, defendant falsely represented that he was a member of the Two Six street gang, and said that they had to be careful of the rival Latin Kings. In reality, defendant previously admitted to joining the Latin Kings when he was 13, and has tattoos identifying himself as a member of the Latin Kings. Similarly, defendant claimed his name was "Anthony," when his actual name was "Andrew."

The government seeks to admit evidence of defendant's membership in the Latin Kings, as well as evidence of the statement made by defendant to Victim B. Direct evidence does not fall within the Rule 404(b) prohibition on propensity evidence. *See e.g. United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.")

Here the proposed gang evidence is directly relevant to the charged kidnapping of Victim B, especially with respect to the anticipated defense of "consent" raised by defendant. Defendant's statement that he was in a street gang, when combined with his possession of a firearm and his demands to Victim B, acted to intimidate Victim B, and allowed defendant to force the victim into acting against her will, a key

25

component of both kidnapping and abduction, and one which defendant has made a central issue in this case.

Defendant's false representation as to *which* gang he belonged is evidence of his consciousness of guilt, and of his knowledge that he was engaged in an illegal act for which he did not want to be identified, as opposed to a consensual act. That directly contradicts defendant's anticipated defense in this case.

With respect to Rule 403, the Seventh Circuit has acknowledged the "powerful nature of gang related evidence," and cautioned that "[e]vidence of gang involvement must be considered carefully to avoid undue prejudice." *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) (upholding admission of evidence of gang evidence). However, "the risk of prejudice associated with gang evidence does not render it automatically inadmissible" and "under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011); *see also United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996); *United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996) ("[G]ang membership can be key to establishing criminal intent or agreement to conspire").

Here, the probative value is not substantially outweighed by any unfair prejudice that may arise as a result of introducing that evidence. The probative value of the evidence is significant, as it goes directly to the issue of coercion or consent that defendant has made central to the case. The risk that the evidence of defendant's gang membership will create unfair prejudice to defendant – as someone charged

26

with kidnapping two women – is comparatively less than it would be for someone facing less serious charges.

## VI. Motion to Exclude Any Evidence or Argument Regarding Victim's Other Sexual Behavior or Sexual Predisposition.

Victims have the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Rule 412(a) prohibits the admission of evidence offered to prove that a victim engaged in other sexual behavior (other than that which is the basis of the charged crime), or evidence offered to prove a victim's sexual predisposition. Fed. R. Evid. 412; *see also United States v. Young*, 955 F.3d 608, 614 (7th Cir. 2020); *United States v. Groce*, 891 F.3d 260, 266 (7th Cir. 2018). "Rule 412(a) applies in any criminal proceeding involving alleged sexual misconduct."

The victims in this case are anticipated to testify regarding kidnappings and sexual abuse by defendant Anania. The question the jury will have to decide is whether or not those acts occurred and whether Anania committed them. The dating history and sexual behavior of the victims are wholly irrelevant to the questions to be decided by the jury, and the Court should prohibit defendant from cross-examining victims regarding their other dating history and sexual behavior, and from otherwise introducing evidence or making arguments regarding those issues. Such questioning and argument would be a tool used to embarrass and intimidate the witnesses, has no bearing on the events at issue, and is not a justification for defendant's violent crimes against the victims.

The government respectfully moves this Court to preclude the defense from introducing evidence or making argument regarding the other sexual behavior or sexual predisposition of the victims in this case.

## VII. Motion to Bar Jury Nullification Arguments

The government respectfully moves this Court to preclude the defense from arguing or presenting evidence designed to elicit jury nullification.

It is improper for a defendant to suggest that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')"); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant"); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) ("[D]efense counsel may not press arguments for jury nullification in criminal cases").

Although the government cannot anticipate every form of "jury nullification" defendant may seek to inject, it moves to exclude the potential areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law

28

or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983).

## A. Penalties Faced by Defendant if He is Convicted

Defendant is charged with an offense that carries a minimum sentence of five years of imprisonment and up to life imprisonment. The Seventh Circuit has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (overturned on other grounds, 526 U.S. 813 (1999)); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'" (footnote omitted) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975))); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); 7th Cir. Pattern Crim. Jury Instr. 4.08 (2012) ("In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial]."). Mention of the potential penalties faced by a defendant — including possible imprisonment, restitution, or fines — would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction and, ultimately, nullification. They should accordingly be excluded.

## B. Motivations for Investigating or Prosecuting this Case

The government seeks to bar any evidence pertaining to why this case was charged at the federal rather than state level.

Claims of selective or vindictive prosecution are irrelevant to the merits. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 464 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). To the extent defendant wishes to raise these issues, he must raise them with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204–05 (7th Cir. 1983) (finding claims of selective prosecution must be raised before trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding that "the issue of selective prosecution is one to be determined by the court"). Defendant has filed no such motions. Accordingly, evidence and argument related to these issues, in any form, should be barred by the Court.

### C.    Allegations or Claims of Outrageous Government Conduct

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." The Seventh Circuit has repeatedly held that

"[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); *see also United States v. Boyd*, 55 F.3d 239, 241–42 (7th Cir. 1995) (stating that "the doctrine [of outrageous governmental misconduct] is moribund" (alteration in original) (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993))). Moreover, the issue of government misconduct is a matter of law for determination by the Court, and must be raised in the form of a pretrial motion. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that "[a]ll of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.") (collecting cases).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (quoting *Sears v. Romiti*, 50 Ill.2d 51, 277 N.E.2d 705 (1971)). In these types of cases, the "thrust of the defense is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *3 (N.D. Ill. 1991); *see also United States v. Boender*, No. 09 CR 186, 2010 WL 811296, at *3 (N.D. Ill. March 3, 2010) ("The Seventh Circuit does not recognize an outrageous government conduct

defense: the doctrine is more than moribund — it is stillborn because it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine."); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992); *United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Accordingly, the government moves to bar the defense from introducing evidence or argument of outrageous government conduct.

## VIII. Motion to Preclude Argument Concerning Missing Witnesses

It is within the Court's discretion to prohibit argument by either side concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "The reasons for not calling witnesses are so many and so complex — from … concern about the witness's appearance and demeanor to concern about the content of the testimony to a belief that the witness would invoke the privilege against self-incrimination — that a full exploration could take the trial far afield." *Id*. Thus, "when [a] witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). "The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party … is sound." *Id*. Therefore, the government requests that the Court prohibit defendant from

introducing evidence about, or arguing that any relevant inference can be drawn from, the fact that additional witnesses did not testify.

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. As the Seventh Circuit has held, ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392–93.

## IX. Motion to Bar Comments Regarding Discovery

The government respectfully moves this Court to preclude defendant from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Mandell*, No. 12 CR 842, 2014 WL 287520, at *3 (N.D. Ill. Jan. 27, 2014); *United States v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion *in limine* to exclude comments on discovery because it "could create the impression that the opposing party is withholding information."). In the same vein, evidence or argument related to missing evidence, absent proof of bad faith, is also improper. *See United States v. Folami*, 236 F.3d 860 (7th Cir. 2001). Therefore, discovery requests should be made to the Court or opposing counsel

33

outside the presence of the jury so that no prejudice results to either side. *See*, *e.g.*, *United States v. Gray*, No. 07 CR 166, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010).

## X.     Motion to Bar Commentary Regarding Evidentiary Rulings

The government respectfully moves this Court to preclude counsel from referring to excluded evidence or commenting on the Court's evidentiary and pretrial rulings in front of the jury. It is improper for counsel to comment on excluded evidence or suggest that it might affect the jury's analysis had the Court admitted it. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) (holding that comments during opening statement on excluded evidence were improper); *Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including commenting on excluded evidence"). Indeed, such comments are irrelevant to whether, on the basis of the evidence presented, the prosecution has proven its case beyond a reasonable doubt. The jury is not allowed to speculate on evidence it has not heard. Counsel may argue the propriety of evidence in motions *in limine*. Once the Court has ruled, however, the matter is concluded and counsel are not free to decide for themselves what evidence is actually admissible. *Rutledge v. Cook County*, No. 06 C 6214, 2009 WL 3187904, at *6 (N.D. Ill. Sept. 30, 2009).

## XI.    Motion to Preclude Any Argument or Evidence Relating to Alibi or Unavailability, Mental Defect, or Public Authority

Under the Federal Rules of Criminal Procedure, a defendant is required to provide the government with notice of: (1) any alibi or similar defense, including any defense asserting the defendant's unavailability on or near the dates named in the

indictment (Rule 12.1); (2) any defense of a mental defect inconsistent with the state of mind required for the offense charged (Rule 12.2); and (3) any defense of public authority (Rule 12.3). Because defendant has not notified the government of his intent to raise any of these defenses, the government requests that he be prohibited from introducing evidence or argument of such defenses at trial.

## XII. Motion to Exclude Argument or Evidence of Lawfulness or "Good Character"

The government respectfully moves this Court to preclude defendant from presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, or prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Federal Rule of Evidence 405(a).[4]

Defendant may seek to admit evidence that, on prior occasions, he acted in a lawful manner. He may further argue that, because he previously performed good acts, he could not have committed the charged offenses. "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *see also United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990);

---

[4] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

*United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific occasions."); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) ("[E]vidence of specific lawful acts of defendants is not properly introduced to show that defendants did not have the requisite intent to commit the crimes charged").

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except when "evidence of a pertinent trait of character [is] offered by an accused or by the prosecution to rebut the same." Thus, a character witness may not offer specific instances of conduct by defendant which would tend to support defendant's reputation. *See United States v. Giese*, 597 F.2d 1170 1188-94 (9th Cir. 1979) (holding that character witnesses must restrict their direct testimony to appraisals of defendant's reputation); *United States v. Hedgecorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("While a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible.").

The fact that defendant may not have kidnapped women on other occasions, for example, is not proof that defendant did not do so in this case. Similarly, evidence that defendant committed specific instances of good conduct or lawful conduct are not proof that he did not commit the charged conduct.

Thus, any evidence or argument regarding defendant's alleged prior good acts

or non-corrupt behavior should be excluded.

## XIII. Motion to Exclude References to Defendant's Health

Under Fed. R. Evid. 402, the Court should exclude as irrelevant all evidence regarding defendant's mental health and diminished capacity. In addition, this evidence should be excluded under Fed. R. Evid. 403, as it has no probative value and improperly invites the jury to consider sympathy for defendant.

Courts have noted that diminished capacity evidence is more properly raised at sentencing, and that any such evidence must be carefully scrutinized to ensure "that it is being offered to negate [specific] intent rather than to justify or mitigate the crime," and that it will not confuse or mislead the jury. *Biron v. United States,* No. 16-CV-108-PB, 2017 WL 4402394, at *4–6 (D.N.H. Oct. 2, 2017); *United States v. Martinez*, 923 F.3d 806, 815–16 (10th Cir. 2019) ("Courts must be cautious about admitting marginally relevant mental-health evidence because the jury may think that it provides an 'excuse' for misconduct or it may otherwise generate sympathy for the defendant" (*citing United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)); *see also United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4–5 (6th Cir. July 26, 2017) (concluding that the district court did not err in rejecting a jury instruction about the defendant's mental health issues where they did not negate the *mens rea* for the charged crimes).

## XIV. Motion to Preclude Explaining or Defining Reasonable Doubt

The government moves to preclude defense counsel from explaining or attempting to define reasonable doubt. The Seventh Circuit has clearly and

consistently held that "reasonable doubt" is a term that should not be defined by the district court or counsel. *See, e.g.*, *United States v. Thompson*, 117 F.3d 1033-34 (7th Cir. 1999) (explaining that by preventing defense counsel's attempt to explain reasonable doubt, "[r]ather than abusing its discretion, the district court heeded our express command"); *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (explaining that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury"); *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) ("[A]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury") (internal quotation marks omitted); *see also* Committee Comment to Seventh Circuit Pattern Criminal Jury Instruction 1.04.

## Conclusion

For the foregoing reasons, the government respectfully moves to admit and exclude evidence as set forth above.

Dated: November 13, 2024          Respectfully submitted,

                                  MORRIS PASQUAL
                                  Acting United States Attorney

                         By:      */s/ Cornelius Vandenberg*
                                  CORNELIUS VANDENBERG
                                  MEGAN DONOHUE
                                  Assistant United States Attorney
                                  219 South Dearborn Street, Fifth Floor
                                  Chicago, Illinois 60604

(312) 353-5300