**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CR-00633 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ANDREW ANANIA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Court held a pretrial conference on December 19, 2024. This Order summarizes the motions and pretrial issues that were addressed during the pretrial conference.

### I. Motion Quash Trial Subpoena to Moran (R.119)

Before the pretrial conference, co-defendant Walter Moran moved to quash the trial subpoena issued to him by Defendant Andrew Anania to compel Moran's testimony at Anania's trial. R. 119, Mot. Quash. Moran was charged in the second superseding indictment with one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and one count of carjacking, in violation of 18 U.S.C. § 2119. R. 63, Second Superseding Indictment. The indictment charged both Moran and Anania for these crimes allegedly committed against Victim C. *Id.*

Moran pleaded guilty to the charges in the superseding indictment, and one month later, Anania served Moran with a trial subpoena to compel potentially exculpatory testimony at his trial. R. 103, Moran Plea. In response, Moran sought to quash the trial subpoena based on his Fifth Amendment right against self-incrimination. Mot. Quash ¶ 5–7. He argued that, even though he already pleaded guilty, the right against self-incrimination still applies because he has not been sentenced. *Id.* ¶ 7 (citing *Mitchell v. United States*, 526 U.S. 314, 325 (1999); *United States v. Wright*, 634 F.3d 917, 920 (7th Cir. 2011); *United States v. Longstreet*, 567 F.3d 911, 922 (7th Cir. 2009)).

The Fifth Amendment provides that "No person … shall be compelled in any Criminal Case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The privilege applies to testimony elicit during direct and cross-examination and lasts through a witness's direct criminal appeal. *Mitchell v. United States*, 526 U.S. 314, 326 (1999). Even with its broad sweep, however, the privilege is not invocable on the mere say-so of a witness. The court must evaluate whether the witness has reasonable cause to fear incrimination from their answers if questioned at a different trial. *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). A witness cannot decline to take the stand merely because "he declares that in so doing he would incriminate himself," or because of a mere possibility that he might perjure himself. *Hoffman*, 341 U.S. at 486; *United States v. Howard*, 2024 WL 2019412, at *6 (N.D. Ill. May 6, 2024). The court must determine if invoking the Fifth Amendment is justified and the court may require the witness to testify if it is not. *Hoffman*, 341 U.S. at 486.

At the pretrial conference, Moran offered two grounds for invoking the privilege: (1) his potential direct-exam testimony exculpating Anania would still expose Moran to self-incrimination during the government's cross-examination; and (2) the government would likely argue that exculpating Anania is a lie and thus would form the basis of a Guidelines enhancement for obstruction or a perjury charge (or both). Anania responded that the testimony that he plans to elicit is consistent with Moran's proffer and he will limit the scope of direct examination to just that testimony. The government, not surprisingly, argued that it has evidence showing that Anania and Moran committed the charged crimes against Victim C together, so Moran's testimony would amount to perjury and could lead to an obstruction of justice enhancement at sentencing. Jumping on that bandwagon, Moran pointed to the government's position as reasonable cause to fear a Guidelines obstruction enhancement or a perjury charge.

On Moran's first concern—that limiting the direct examination of Moran is not enough to protect him—is accurately based on the principle that the government inevitably would be allowed to cross-examine Moran on his own participation in the charges. *See Mitchell*, 526 U.S. at 325–327 (holding that, even after pleading guilty, a defendant retains the privilege in part because of the threat of cross-examination). After all, the government need not sit idly by and accept Moran's Anania-exculpating

2

version of the events. Still, the government would need a good-faith basis to conduct that cross-examination. Likewise, on the second concern—the threat of obstruction or perjury—the government needs enough evidence to induce Moran to have reasonable cause that those threats will become reality. So, as to both grounds, the privilege will hinge on whether the government has sufficient evidence that Moran and Anania *together* committed the alleged crimes against Victim C. At the pretrial conference, the government verbally proffered evidence that almost surely would be sufficient. In any event, the Court directed the government to file a written proffer, attaching exhibits (such as the evidence tying the tattoo on Anania's hand to the description provided by the witness), explaining the evidence showing that Anania and Moran committed the offenses together. The government's proffer is due on December 27, 2025. Anania and Moran are each permitted to file a response, due on January 6, 2025. No reply is needed at this time.

## II. Motions in Limine

**Government Motion to Allow Victim B's Prior Consistent Statements.** Before the pretrial conference, invoking Evidence Rule 801(d)(1)(B)(i), the government moved to allow Victim B's prior consistent statements in which she reported to police the threats that Anania allegedly made against her. R. 110, Gov't Mot. at 24. The government argued that this evidence is admissible as a hearsay exemption to prove that Victim B is not fabricating her testimony at trial. *Id.* Anania opposed the motion and suggested that a decision be reserved pending Victim B's direct and cross examination. R. 113, Def. Resp. at 4. As explained in the pre-pretrial conference order, Rule 801(d)(1)(B)(i) is triggered only if the defense accuses Victim B of engaging in a *recent* fabrication of her trial testimony. R. 121, 12/17/2024 Order.

At the pretrial conference, the government clarified its theory for a "recent fabrication" attack on Victim B's testimony: Victim B relatively recently filed a lawsuit against Uber and Anania, so the defense might argue that she has an incentive to accuse Anania of misconduct to help her in that civil case and ultimately obtain a financial gain. If the Defendant cross-examines Victim B on her lawsuit against Uber, the prior consistent statement would likely be admissible under Rule 801(d)(1)(B)(i). Otherwise, there appears to be no other basis to introduce the statements to police as a rebuttal to a recent-fabrication attack.

**Defense Motion to Exclude Evidence of the Sexual Assault of Victim B.** Before the pretrial conference, Anania moved to exclude evidence of the sexual

3

assault of Victim B as irrelevant to the alleged kidnapping and carjacking of Victim B and Victim C. R. 111, Def. Mot. at 8. The government responded that the evidence is relevant to an essential element of the kidnapping offense—the seizure of the victim—and thus the probative value of the evidence significantly outweighs the risk of unfair prejudice. R. 114, Gov't Resp. at 6–10. In the pre-pretrial conference order, the Court denied the defense motion to exclude evidence of the sexual assault of Victim B: the evidence is relevant to proving Victim B's lack of consent, but a limiting instruction is likely appropriate. 12/17/2024 Order at 10.

At the pretrial conference, the Court ordered the defense to file its proposed limiting instruction by January 3, 2025. The Court stated that the government may cross-file a proposed limited instruction. The parties suggested that they would confer and might jointly propose a limiting instruction. In any event, whether filed jointly or separately, the proposal is due on January 3, 2025.

**Defense Motion to Exclude Post-Arrest Statements.** Before the pretrial conference, Anania moved to exclude evidence of his post-arrest statement to law enforcement, specifically, his statement that he had a warrant out for his arrest and that he missed court. Def. Mot. at 10. Anania argued that this statement is irrelevant to the charges of kidnapping and carjacking, as well as to the charge of possession of a firearm. *Id.* Anania also emphasized that he has stipulated that he was on pretrial release at the time of the commission of the alleged charges in this case. The government responded that the statements are allowable as a party-admission and are relevant to consciousness of guilt. Red. R. Evid. 801(d)(2); Gov't Resp. at 10–11.

In the pre-pretrial conference order, the Court granted the defense motion to exclude post-arrest statement as irrelevant. 12/17/2024 Order at 11. But the order also noted that the government, in its response brief, had suggested that it will seek to introduce other evidence concerning Anania's failure to surrender, see Gov't Resp. at 12, so the Court directed the government to discuss this evidence at the pretrial conference. 12/19/2024 Order at 11.

At the pretrial conference, the government stated that it intends to introduce evidence of (1) Anania's flight, on March 10, in a high-speed chase and then on foot following the alleged kidnapping and carjacking involving Victim C; (2) records of Anania's online searches for kidnappings in the Chicago area between March 10 and March 23, 2021; and (3) Anania's statement on March 12, 2021 that he would self-surrender to the U.S. Marshals Service, but then failed to do so. The government

4

argued that this evidence would show consciousness of guilt. In response, Anania contended that the March 10 high-speed chase does not support an inference of consciousness of guilt of the kidnappings and carjackings, given that he had failed to appear for court. Anania also argued that the probative value of his statement that he would surrender, then failed to do so, is diminished because he eventually self-surrendered, so the risk of unfair prejudice is great.

As discussed during the pretrial conference, evidence of the high-speed chase and phone searches are relevant to show Anania's consciousness of guilt as to the charged offenses—that conduct, if it happened, goes well beyond just consciousness of guilt for not appearing for a court hearing. So those two categories of evidence are allowed. In contrast, the relevancy of the statements that he would refuse to surrender are severely diminished by the fact that he ultimately did voluntarily surrender without further incident. Under Rule 403, the risk of unfair prejudice substantially outweighs the relevancy to consciousness of guilt. The post-chase refusals to surrender are disallowed.

## II. Miscellaneous

**Exhibit List.** *Proposed Exhibits 302A, 303A, 304A.* The Court will post a separate order with the overall exhibit chart, but it is worth discussing proposed Government Exhibits 302A, 303A, and 304A here. Those exhibits are associated with three witnesses, Kimberly Irving, Katherine Witthoeft, and Adriana Witthoeft, respectively, identifying Anania in a police lineup after those witnesses encountered him before the March 8, 2021, kidnapping. At the pretrial conference, the government stated that it intended to use this evidence both to prove Anania's identity for the crimes against Victim B and to describe Anania's demeanor on the day of the kidnapping. Anania objected, arguing that the evidence is not relevant given Anania's stipulation to identity for the charged crimes against Victim B and the other evidence that the government plans to introduce on identity.

It is true that, generally speaking, even though Anania stipulated to his identity for the crimes charged against Victim B, the government still may put on evidence to provide context of the charged crimes and to tell a story—so long as relevant and survives Rule 403—about what happened in the lead up and during the commission of the alleged crimes. *See Old Chief v. United States*, 519 U.S. 172, 186–87 (1997) ("[T]he prosecution is entitled to prove its case by evidence of its own choice, or … a criminal defendant may not stipulate or admit his way out of the full evidence force of the case as the Government chooses to present it."). So the lead up to Anania

5

ordering the Uber that brought him into contact with Victim B is admissible—up to a point. The witnesses may testify to the facts that they have personal knowledge of, but (as discussed during the pretrial conference) they may not testify to their impressions of Anania (and what he said about the fight with his girlfriend), because those opinions lack relevancy, foundation, and do not survive Rule 403 balancing.

**Jury Instructions.** *Proposed Instruction 25.* At the pretrial conference, the Court discussed with the parties the required elements for the jury instruction on kidnapping, 18 U.S.C. § 1201. That statute provides, in relevant part:

> "(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and *holds for ransom or reward or otherwise* any person ... shall be punished by imprisonment for any term of years or for life ...."

18 U.S.C. § 1201(a) (emphasis added). The Seventh Circuit Pattern Jury Instruction on § 1201(a)(1) mirrors the statute in almost every way—except the "holds for" text is omitted. The pattern would instruct the jury:

> In order for you to find the defendant guilty of either of these charges, the government must prove each of the following elements beyond a reasonable doubt:
>
> 1. The defendant unlawfully seized, confined, kidnapped, abducted, or carried away the victim without her consent; and
>
> 2. The defendant used a means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

Seventh Circuit Pattern § 1201(a)(1) (2023 ed.) at 614. What's missing is a reference to the statute's text that seemingly requires that the defendant "holds for ... otherwise," that is, a purpose for the kidnapping.

The Committee Comment to the Pattern Instruction provides a potential clue on the omission. Citing *United States v. Atchinson*, 524 F.2d 367, 371 (7th Cir. 1975), the Comment explains that "purpose is not an element of the offense of kidnapping and need not be charged or proven to support a conviction." *Atchinson* reached this conclusion by referring to the legislative history of 18 U.S.C. § 1201, the federal kidnapping statute, which describes that Congress added the phrase "or otherwise" to the statute in 1934 to "extend the jurisdiction of this act to persons who have been kidnaped and held, not only for reward, but for *any reason*." *Id.* at 369 (emphasis

6

added) (citing S. Rep. 534, 73d Cong., 2d Sess., March 22, 1934). One viewpoint consistent with *Atchinson* is that the statutory text "holds for … otherwise" is so broad— that is, any reason or purpose will suffice—that the text does no work and does not add an actual, separate element. It indeed would be odd if a kidnapper could defend against a kidnapping charge in which all other elements were established by saying that he had no particular purpose in kidnapping the victim.

But in a later case, the Seventh Circuit arguably walked back the no-separate-element viewpoint. In *United States v. Jones*, 808 F.2d 561 (7th Cir. 1986), the Seventh Circuit distinguished the kidnapping statute from the Mann Act, the latter of which barred (at the time) the transportation of a female for purposes of, among other things, prostitution. *Id.* at 566. *Jones* expressed that the kidnapping statute also has an element of purpose—but *any* purpose will qualify. *Id.* at 566 ("The elements of kidnapping are: a knowing and willful transport, in interstate commerce, of an *unconsenting individual* for *any* purpose.") (emphasis in original). As odd as it would be for a kidnapper to defend against a charge by saying that he had no particular purpose in mind, it is also bizarre to read statutory text out of existence and take the issue from the jury.

In its response to Anania's motion in limine, the government argued that evidence of the alleged sexual assault of Victim B is relevant to proving that Anania "unlawfully seized, confined, kidnapped, abducted, carried away, *or otherwise*" Victim B.[1] Gov't Resp. at 6–10. But the government's proposed jury instruction (understandably based on the Pattern) does not ask the jury to find that the kidnapping had a purpose. To resolve this issue, the Court ordered the parties to file a position statement on whether the kidnapping-elements instruction should include an element that refers to the "holds for … otherwise" text, that is, some kind of purpose. The filing is due on December 30, 2024.

*Proposed Jury Instruction 29.* Anania objected to proposed Government Instruction No. 29, which says, "The government does not have to prove that the kidnapping was committed for ransom or personal financial gain." R. 106 at 33. The defense contends that the instruction is "unnecessary as defendant does not intend to" argue that the government must prove "that the kidnapping was committed for ransom or personal financial gain." *Id.*

---

[1] Evidence of the sexual assault of Victim B remains relevant to proving lack of consent and is admissible. 12/17/2024 Order at 9–10.

At the pretrial conference, the government explained that it included this instruction because the popular understanding of kidnapping is taking a person for ransom or reward. The Court agrees that there is a substantial risk that a non-lawyer jury would have in mind this common understanding of kidnapping, and it should be dispelled for the jury in this neutral way. Anania's objection is overruled, and the proposed jury instruction is allowed.

*Proposed Jury Instruction 47.* Government Instruction No. 47 would instruct the jury that "Any person who knowingly aids the commission of an offense may be found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed." R. 106 at 51. At the pretrial conference, the government clarified that this instruction refers to the charged crimes against Victim C, which were allegedly committed by Moran and Anania together. Anania objects to this instruction, as he does not expect any evidence of aiding and abetting. He explains that either Anania was directly involved, or not. The Court reserves a decision on this instruction until trial, though it is likely an appropriate instruction.

**Voir Dire / Alternates.** The Court will post the voir dire questions before trial. There will be three alternate jurors.

**Length of Jury Addresses.** As proposed by the parties, opening statements will be 30 minutes for each side, and closing statements will be 90 minutes for each side. The government's rebuttal may not exceed the length of the opening closing argument. Good cause for more time may be sought if appropriate.

ENTERED:

            s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 26, 2024